FILED

January 25, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 7:15 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| **ESSIE JOHNSON**<br>　　　　**Employee,**<br>**v.**<br>**FIRST UNITED METHODIST**<br>**CHURCH**<br>　　　　**Employer,**<br>**And**<br>**TRAVELERS**<br>　　　　**Insurance Carrier.** | **Docket No.: 2015-07-0270**<br><br>**State File Number: 76187-2015**<br><br>**Judge Amber E. Luttrell** |

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Essie Johnson, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Johnson seeks medical and temporary disability benefits for an alleged back injury. The employer, First United Methodist Church (FUMC), denied compensability of Ms. Johnson's alleged injury. The central legal issue is whether Ms. Johnson is likely to establish at a hearing on the merits her alleged back injury arose primarily out of her employment with FUMC. For the reasons set forth below, the Court finds that Ms. Johnson did not carry her burden of proving entitlement to the requested benefits at this time.[1]

### History of Claim

Ms. Johnson is a fifty-eight-year-old resident of Madison County, Tennessee. (T.R.1.) She worked for FUMC in Jackson, Tennessee as a custodian. Her job duties included, but were not limited to, emptying trash, vacuuming the floor, dust mopping, cleaning bathrooms, and cleaning tables.

On April 15, 2015, Ms. Johnson mopped the floor in a banquet room called

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

"Clayton Hall" and experienced pain in her back. Ms. Johnson testified she went home that evening and took ibuprofen for pain relief. Two days later, on April 17, 2015, Ms. Johnson mopped a portion of the gymnasium floor and experienced pain again in her back. She reported the pain to her supervisor, Tricia Odom. FUMC offered Ms. Johnson a panel of physicians, and she selected Dr. Keith Ellis at Physicians Quality Care for treatment. (Ex. 8.)

Ms. Johnson saw Dr. Ellis on April 29, 2015. She gave Dr. Ellis a history of "mopping a large area that was too much for her" and experiencing pain in her back.[2] (Ex. 4 at 53.) Dr. Ellis noted the location of Ms. Johnson's pain was in her mid-back area with pain radiating down her back. She reported prior "issues" with pain in her back, but not like her current symptoms. Dr. Ellis' record did not list a diagnosis for the back complaints. He only diagnosed pain in her knees and shoulder. In the "plan" section, Dr. Ellis noted, "I think she has pre-existing issues with pain and these have been exacerbated by her work. I am going to restrict her twisting, bending, and stooping for one week and have her follow up." FUMC accommodated Ms. Johnson's light-duty restrictions and provided her work shredding papers. Ms. Johnson testified she did not miss any work and earned the same wages while working light duty.

Ms. Johnson returned to Dr. Ellis for follow-up care on May 6, 2015. *Id.* at 56. Ms. Johnson reported she did nothing but sitting since her last visit. She complained of back pain when standing or lying down. Again, Dr. Ellis did not list a diagnosis for the back pain. In the "plan" section, he stated the following,

> My concern is that she has some pre-existing issues that are making my determination of her baseline difficult. I am going to alter her restrictions and recommend an orthopedist see her to determine the significance of the pre-existing issues vs. her complaints now. She is frustrated because she "knows" the difference and I don't know that she understands the importance of determining percentage of pre-existing issues involved in her current discomfort.

*Id.*

Based upon Dr. Ellis' orthopedic referral, FUMC offered Ms. Johnson a panel of orthopedic physicians from which she selected Dr. Sam Murrell at OrthoMemphis for further treatment. (Ex. 9.)

Ms. Johnson saw Dr. Murrell on June 19, 2015, and complained of low-back pain and bilateral leg pain, left worse than right. Dr. Murrell took a history from Ms. Johnson

---

[2] Ms. Johnson also reported symptoms in her knees; however, the DCN in this case references only a back injury. There is no alleged knee injury before the Court. Therefore, the Court considered only the portions of the medical records pertaining to Ms. Johnson's back.

2

that revealed she had previous back and leg pain and treated at West Tennessee Bone and Joint for an injury in the remote past. Dr. Murrell reviewed a record from West Tennessee Bone and Joint dated January 28, 2015, where Ms. Johnson complained of back and leg pain. He further noted a reference in the record to a back injury from 2012. Following a physical examination, Dr. Murrell diagnosed degenerative disc disease of the lumbar spine with low-back pain and leg symptoms suggestive of possible radiculopathy or stenosis. Dr. Murrell commented as follows:

> I have discussed the findings with the patient. I have recommended a referral for an MRI scan. I have also told her, however, that I do not think she has a work-related injury. She really has no significant activity other than the repetitive activities of sweeping which she attributes to her injury. Furthermore, it is clear from the records that she has had these symptoms prior to April of this year. It appears as though these are the exact same symptoms from [sic] she has tried to file claims for her work comp in the past. I think that her underlying degenerative condition is more likely the source of her symptoms. Again, I think concerning work that she could do her regular duties without restriction. I do recognize that she has subjective complaints of pain, and because of this I am going to recommend that we go ahead and proceed with an MRI scan, but again, I think this is due to her underlying degenerative condition and not a work-related injury.

(Ex. 4 at 59.)

At the expedited hearing, Ms. Johnson disputed the accuracy of both Dr. Ellis' and Dr. Murrell's records that indicated she reported *low*-back pain. Ms. Johnson testified that she told them her pain and injury was in her "upper back." Despite this alleged inaccuracy, Ms. Johnson introduced into evidence the medical records of Dr. Murrell and Dr. Ellis for her medical proof in this case. She also testified on cross-examination that both Dr. Ellis' records and Dr. Murrell's records causally related her back condition to her work.

FUMC offered the testimony of Ms. Odom and Glynn Graves for its case in chief.[3]

Ms. Odom is the operations manager for FUMC. She testified she asked Ms. Johnson to "spot mop" Clayton Hall on or about April 16, 2015. Typically, another employee, Mr. Hopper, performed this job; however, he was off work at the time.[4]

---

[3] FUMC's witnesses testified they observed Ms. Johnson spending considerable time sitting in Sunday school classrooms studying, eating, or talking on the phone instead of working. They gave further testimony suggesting Ms. Johnson had a poor work ethic and was not a "team player." The Court gave little consideration to this testimony since Ms. Johnson's work habits are not directly relevant to whether she sustained a compensable work injury to her back as alleged in the Request for Expedited Hearing.

[4] The Court notes Ms. Johnson questioned FUMC witnesses extensively regarding who typically mopped Clayton Hall and the gymnasium, how many individuals typically mopped these spaces, and why she was asked to mop these

According to Ms. Odom, Ms. Johnson mentioned her knees were hurting, but did not mention her back. Ms. Odom testified Ms. Johnson first mentioned back pain from performing mopping duties several days later. Ms. Odom provided Ms. Johnson the two panels of physicians for treatment. She confirmed Ms. Johnson did not request any time off due to her back complaints. Ms. Odom confirmed FUMC accommodated Ms. Johnson's light-duty restrictions.

Mr. Graves works in facilities and maintenance for FUMC. In the course of a workday, Mr. Graves saw Ms. Johnson six to ten times. He testified they "talked about everything." Ms. Johnson never complained to him of any back problems or back injury. Mr. Graves did not know Ms. Johnson alleged an on-the-job back injury until he was asked to testify in this case.

According to the medical records admitted into evidence, Ms. Johnson sought treatment for her back *prior to* the alleged work injury on April 15, 2015. Medical records from her personal physician, Dr. Marshall Banks, indicate he diagnosed Ms. Johnson with lumbar spondylosis as early as April 2013. (Ex. 4 at 9.) Ms. Johnson also treated with a chiropractor, Dr. Joel Durham, from July 2013 through May 2014 for complaints in her cervical, thoracic, and lumbar spine with reported radiation into her legs. *Id.* at 13-39. Ms. Johnson also saw Dr. Jason Hutchison, an orthopedist, in January 2015 for her back and feet.[5] During the evaluation, Ms. Johnson complained of pain that ran from her feet and legs up to her back. Dr. Hutchison reviewed x-rays previously taken of her lumbar spine in 2013, which revealed "moderate, but age appropriate, lumbar spondylosis with a little hyperlordosis on the lateral film." *Id.* at 43. Dr. Hutchison opined Ms. Johnson had age-appropriate lumbar arthritis not directly related to her occupation.

FUMC denied Ms. Johnson's workers' compensation claim following Dr. Murrell's opinion that Ms. Johnson's back condition was not a work-related injury. (Ex. 2.) Ms. Johnson filed a Petition for Benefit Determination seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Ms. Johnson filed a Request for Expedited Hearing, and this Court heard the matter on December 9, 2015. At the expedited hearing, Ms. Johnson asserted she sustained an injury or aggravation to her back arising primarily out of her employment. FUMC countered that Dr. Murrell, the physician selected from the panel, opined that Ms. Johnson's back symptoms did not arise out of a work-related injury, but rather her underlying degenerative condition. FUMC argued that Dr. Murrell's causation opinion is presumed correct pursuant to

---

spaces in April 2015. The Court omitted this lengthy line of questioning from the history of the claim since there is no dispute that Ms. Johnson mopped Clayton Hall and the gymnasium on the dates in question. Furthermore, the Court finds these details not relevant to the issue of whether Ms. Johnson sustained a back injury arising primarily out of her employment with FUMC while mopping.

[5] FUMC sent Ms. Johnson to Dr. Hutchison for evaluation in a separate workers' compensation claim for alleged injuries to her feet.

Tennessee Code Annotated section 50-6-102(14)(E) (2015). Thus, it contends Ms. Johnson is not entitled to workers' compensation benefits for her alleged injury.

**Findings of Fact and Conclusions of Law**

The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

For injuries on or after July 1, 2014, an employee must show that he suffered an accidental injury caused by an incident, or specific set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A) (2015). "Arising primarily out of and in the course and scope of employment" requires a showing, to a reasonable degree of medical certainty, that the injury causing disablement or the need for medical treatment contributed more than fifty percent considering all causes. Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes. Tenn. Code Ann. § 50-6-102(14)(D) (2015). The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (2015).

In this case, the Court finds the medical records admitted into evidence clearly indicate Ms. Johnson complained of, and received treatment for, back pain prior to the April 17, 2015 alleged date of injury. The Court further finds the only medical proof before the Court addressing medical causation for Ms. Johnson's alleged April 2015 back injury is from Dr. Murrell, the panel-selected physician. Upon review of Ms. Johnson's complete records and examining Ms. Johnson, Dr. Murrell could not opine that Ms. Johnson's alleged work injury of mopping floors caused her back condition. To the

5

contrary, he opined Ms. Johnson's back symptoms did *not* primarily arise out of a work-related injury. Instead, Dr. Murrell stated, "her underlying degenerative condition is more likely the source of her symptoms." (Ex. 4 at 59.) Pursuant to section 50-6-102(14)(E) (2015), Dr. Murrell's causation opinion is afforded a presumption of correctness that is rebuttable only by a preponderance of the evidence. The Court finds Ms. Johnson offered no expert medical evidence to rebut Dr. Murrell's opinion.

Accordingly, as a matter of law, Ms. Johnson did not come forward with sufficient medical evidence from which this Court may conclude that she is likely to prevail at a hearing on the merits to prove her injury arose primarily out of and in the course and scope of her employment. Therefore, her request for medical benefits is denied.

Having found the medical proof fails to establish Ms. Johnson's back condition primarily arose out of her employment with FUMC, the Court further finds Ms. Johnson is not entitled to the requested temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Johnson's claim against First United Methodist Church and its workers' compensation carrier for the requested medical and temporary disability benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on February 11, 2016, at 1 p.m. Central time.

**ENTERED this the 25th day of January, 2016.**

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Luttrell, Court of Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-543-5046 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

6

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of

7

the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of Essie Johnson
2. Notice of Denial of Claim
3. Wage Statement
4. Medical Records of the following providers:
   a. Jackson Clinic
   b. Durham Chiropractic
   c. Dr. Jason Hutchison
   d. Nova Medical Centers
   e. Physicians Quality Care
   f. Dr. Sam Murrell
5. Separation Notice
6. Job Description
7. 2015 Attendance Calendar
8. C-42 Panel of Physicians dated April 29, 2015
9. C-42 Panel of Physicians dated June 5, 2015
10. Tricia Odom's May 5, 2015 Memo to Ms. Johnson Personnel File
11. Tricia Odom's April 16-17, 2015 Memo to Ms. Johnson's Personnel File
12. Tricia Odom's June 23, 2015 Memo to Ms. Johnson's Personnel File
13. Tricia Odom's September 8, 2015 Memo to Ms. Johnson's Personnel File

Technical record:[6]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer Witness List
5. Employer's Position Statement

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of January, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Essie Johnson, Employee | X | | | 33 Denmark Jackson Road Denmark, Tennessee 38391 |
| Paul T. Nicks, Employer's Counsel | | | X | pnicks@travelers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

10